NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-558

STATE OF LOUISIANA

VERSUS

LANCE S. BARTON

**********

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 69,035
HONORABLE GLENNON P. EVERETT, DISTRICT JUDGE

**********

OSWALD A. DECUIR
JUDGE

**********

Court composed of Oswald A. Decuir, Elizabeth A. Pickett, and Shannon J. Gremillion, Judges.

REVERSED AND REMANDED.

Alfred F. Boustany II
Attorney At Law
P. O. Box 4626
Lafayette, LA 70502
(337) 261-0225
Counsel for Defendant/Appellant:
	Lance S. Barton

**Michael Harson**
**District Attorney**
**P.O. Box 3306**
**Lafayette, LA 70502-3306**
**(337) 232-5170**
**Counsel for Appellee:**
  **State of Louisiana**

**Roger P. Hamilton, Jr.**
**Assistant District Attorney**
**P. O. Box 288**
**Crowley, LA 70527**
**(337) 788-8831**
**Counsel for Appellee:**
  **State of Louisiana**

**Lance S. Barton**
**In Proper Person**
**#106920/Unit Two-Dorm 12**
**Dixon Correctional Institute**
**P.O. Box 788**
**Jackson, LA 70748-0788**

**DECUIR, Judge.**

Defendant, Lance S. Barton, was convicted by a jury of molestation of a juvenile, a violation of La.R.S. 14:81.2, and oral sexual battery, a violation of La.R.S. 14:43.3, on July 15, 2010. He was sentenced on December 15, 2010 to serve fifteen years at hard labor on the molestation conviction and ten years at hard labor on the battery conviction, with the sentences to be served consecutively. Defendant now appeals his conviction, urging three assignments of error. He argues first that he was deprived of his right to present his defense because the trial court allowed the withholding of exculpatory evidence in the records of the Office of Child Services (OCS) and the Department of Corrections (DOC). Defendant next contends the trial court erred by denying both his motion for mistrial and his motion to dismiss his attorney because his attorney's health and the withholding of records rendered his attorney ineffective. Finally, Defendant, *pro se*, argues the trial court erred in denying his motion for post-verdict acquittal because the evidence was insufficient to convict him.

In November of 2005, Sharon Mott of the Crowley Police Department received calls from two OCS workers investigating a possible sexual assault of juveniles by a suspect living in the Crowley area. One of those juveniles was ten-year-old L.T. [1] Mott and the OCS representative arranged for L.T. to be interviewed at Stuller Place in Lafayette; the interview led to Defendant's arrest. The evidence shows that Defendant was a registered sex offender, a fact well known in the community among both adults and children. In the interview at Stuller Place, L.T. told how Defendant touched her, her sister, and her friends inappropriately during the summer of 2005. The video of the Stuller Place interview was played to the jury and admitted as an exhibit at trial.

---

[1]Initials are used to protect the identity of the victim pursuant to La.R.S. 46:1844(W).

On April 19, 2006, Defendant filed a motion requesting "copies of all discoverable information relevant to this matter." Four years later, on July 6, 2010, which was a week prior to trial, the trial judge heard a discovery motion and stated he had reviewed Defendant's parole file and found nothing favorable to Defendant and "nothing in the parole file or in DOC's file suggesting that it would be helpful or would be considered *Brady* evidence." The trial judge also stated he had not seen the OCS file but believed that an inspection of the file had already occurred. The State volunteered to forward the OCS report to the trial judge's office. Defendant's counsel made no comment.

The record provides no affirmative evidence showing that the OCS file was given to Defendant at any point before or during the trial. During the hearing of Defendant's motion for new trial, Defendant's trial counsel testified he had never seen the OCS records, although he believed he had issued a subpoena for them.

**ASSIGNMENT OF ERROR NO. 1:**

Defendant alleges the trial court erred by allowing the State to withhold exculpatory evidence from the DOC and OCS files, including evidence of inconsistent victim statements and denial of the crimes by the victim, and this withholding deprived Defendant of his right to present his defense. The record on its face does not show Defendant ever received any materials from the OCS file. This court's review of the OCS record which was offered into evidence at the new trial hearing reveals both inculpatory and exculpatory evidence which should have been provided to Defendant in pretrial proceedings. The OCS file includes, for instance, a report of an interview with a witness, L.T.'s aunt, Trudy Richard, which indicates Richard "had asked the girls if [Defendant] touched them in their private and they said no." Another report of an interview with Wilda Green, L.T.'s grandmother, states, "Mrs. Green indicates she asked the girls if he touched them

2

or did anything to them and they said no." L.T. herself said during an October 31, 2005 interview (after the alleged molestation) that "[t]hings are good at home." Her November 10, 2005 interview, however, reports Defendant touched her one night at Tina Cormier's home. She told her parents a couple of weeks after it happened, and "her granny found out at the same time." While L.T. indicated Defendant had touched her, she denied penetration. On November 14, 2005, however, Elizabeth Trahan told OCS she overheard one of the girls, "the one who is in third grade," say Defendant had raped her and that it had "happened to [her] older sister, too."

These reports contain potentially exculpatory evidence to which Defendant was entitled pursuant to *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194 (1963). Evidence which casts doubt on the credibility of the government's witness is exculpatory evidence. *U.S. v. Duval*, 496 F.3d 64 (1st Cir. 2007). Had Defendant been given this information, he could have called OCS personnel as witnesses and questioned them about whether L.T. had denied abuse by Defendant and possibly questioned L.T.'s credibility. He could also have questioned L.T. about whether she had ever spoken to her aunt and her grandmother about the abuse and/or denied the abuse.

Regarding the DOC records, Defendant acknowledges that the file was provided to him, but it was untimely. Defendant's counsel received the DOC records on the second day of trial. Those records indicate L.T. and her sisters denied abuse to Renee Spell of Acadia OCS. On the third day of trial, Defendant's counsel addressed the DOC records and indicated that had he been given the file timely, he would have called Renee Spell as a witness.

The record does not indicate defense counsel made an effort to obtain Spell's testimony or sought a continuance to obtain it. Instead, he argued the State

3

withheld the information. Counsel filed a motion for discovery on April 19, 2006. In a letter to the State dated May 29, 2009, counsel requested recordings of the interviews with L.T. and K.T. or, if not recorded, summaries of the interviews and any notes taken by Defendant's parole officer and the OCS representative. The record does not indicate that anything was ever provided in response to these requests. Instead, on July 6, 2010, just a week prior to trial, the trial judge told Defendant he had found no *Brady* evidence in the DOC file.

Even witness statements normally not discoverable must be furnished to a defendant when they contain information favorable to the defendant for *Brady* purposes. *State v. Kemp*, 00-2228 (La. 10/15/02), 828 So.2d 540. The information must be disclosed in a timely fashion "to provide the defense with adequate opportunity to present the material effectively in its case." *Id.* at 545 (citing *State v. Prudholm,* 446 So.2d 729 (La.1984)). "If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." "On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *Id.* (quoting *U.S .v. Agurs,* 427 U.S. 97, 112-13, 96 S.Ct. 2392, 2402 (1976)). "Given appropriate circumstances, 'the effective impeachment of one eyewitness can call for a new trial even though the attack does not extend directly to others.'" *Id.*, (quoting *Kyles v. Whitley,* 514 U.S. 419, 445, 115 S.Ct. 1555, 1571 (1995)).

Here, portions of the OCS file cast doubt on L.T.'s credibility, and Defendant never had the opportunity to question her about those inconsistencies. Accordingly, the proper remedy is a new trial. *State v. Bright*, 02-2793, 03-2796 (La. 5/25/04), 875 So.2d 37.

## ASSIGNMENT OF ERROR NO. 2 AND *PRO SE* ASSIGNMENT OF ERROR:

Our decision to grant Defendant a new trial pretermits discussion of the remaining assignments of error.

## DECREE

Because the record fails to show potentially exculpatory evidence was furnished to Defendant, Defendant's convictions must be reversed, and this case is remanded for a new trial.

**REVERSED AND REMANDED.**

This opinion is NOT DESIGNATED FOR PUBLICATION. Uniform Rules—Courts of Appeal, Rule 2–16.3.